UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

ULYSSES ADONIS HAGGENMILLER,           Civil No. 06-428 (DSD/AJB)

        Plaintiff,

    v.                    **REPORT AND RECOMMENDATION**

ROBERT FENEIS, PAT ADAIR,
DENISE BARGER, SHERMAN MADDOX,
MARK UNER, and STEVE McARTY,

        Defendants.

Plaintiff brought this action under 42 U.S.C. § 1983, claiming that his constitutional rights were violated while he was incarcerated at the Minnesota Correctional Facility at Rush City, Minnesota, ("MCF-RC").[1]  The named Defendants, who are employees of the Minnesota Department of Corrections, ("DOC"), have filed a motion seeking to have this action dismissed pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure.  (Docket No. 70.)  The matter has been referred to this Court for a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court will recommend that Defendants' motion be granted, and that this action be dismissed.

## I.  FACTUAL BACKGROUND

Plaintiff's lawsuit is based on an incident that occurred at MCF-RC on November 11, 2005.  On that date, Plaintiff was assaulted by two other inmates

---

[1]  Plaintiff was still in prison when he filed this action, but he has since been released.

while returning from dinner.  Correctional Officer Kenneth Peterson observed the incident, and called for assistance.  Within a matter of seconds, several other correctional officers arrived at the scene, and apprehended Plaintiff's assailants. (Affidavit of Kenneth Peterson, [Docket No. 74].)

After the assault, Plaintiff was conscious, but he was bleeding from several injuries to his head.  A prison nurse named Heather Emerson was summoned, and she escorted Plaintiff to the prison's health care unit.  Emerson attended to Plaintiff's injuries, and sought advice from a prison physician who was "on call."  The physician recommended that Plaintiff should be taken to the emergency room at a local hospital.  Emerson noted that Plaintiff seemed to be getting less alert and somewhat disoriented, so she requested that Plaintiff be taken to the emergency room by ambulance.  (Affidavit of Heather Emerson, [Docket No. 75].)

Plaintiff was then picked up by an ambulance and taken to the hospital, where he received further treatment for his injuries, including sutures for some lacerations. He also was treated for a badly broken nose.  While Plaintiff was at the hospital, x-rays were taken, and other tests and procedures were performed, in order to fully ascertain the nature and extent of his injuries.  Plaintiff was then returned to MCF-RC.  (Id.)  During the following weeks, the prison health care providers continued to monitor Plaintiff's recovery from his injuries.

## II.  PLAINTIFF'S CLAIMS

On January 31, 2006, Plaintiff filed a complaint seeking relief under 42 U.S.C. §

1983.  (Docket No. 1.)[2]  The complaint alleges that four of the named Defendants, Robert Feneis, Pat Adair, Mark Uner and Steve McArty, knew that Plaintiff had been threatened by other inmates before he was assaulted on November 11, 2005.  Defendant Feneis is the Warden at MCF-RC, and Defendants Uner and McArty, (whose name is actually spelled "McCarty"), are investigators for the Office of Special Investigations within the DOC. Defendant Adair is the Warden at the Minnesota Correctional Facility at St. Cloud, Minnesota, where Plaintiff was confined until just a few days before the assault at issue here.  According to the complaint, these four defendants violated Plaintiff's constitutional rights under the Eighth Amendment, by deliberately disregarding the serious risk to his safety that was posed by the inmates who allegedly threatened him.

Plaintiff is also attempting to sue Denise Barger, the Health Services Administrator at MCF-RC while Plaintiff was confined there.  Plaintiff claims that Defendant Barger "has refused to allow plaintiff to be seen by institutional physician[s] regarding plaintiff[']s medical

---

[2] Plaintiff attempted to file an amended complaint on September 18, 2006, (Docket No. 33), and again on October 5, 2006, (Docket No. 38).  However, both of those proposed new pleadings were stricken, because Plaintiff disregarded the conditions for amending that had been established by a prior Court order.  (See Orders dated September 6, 2006, [Docket No. 32], September 21, 2006, [Docket No. 35], and April 23, 2007, [Docket No. 115].)  The Court's order of April 23, 2007, [Docket No. 115], granted Defendants' motion to dismiss Plaintiff's last proposed new complaint, which was filed on October 5, 2006. That order expressly ruled that "[t]he amended complaint filed on October 5, 2006 [Docket No. 38], is **hereby stricken**."  (Emphasis in the original order.)  Thus, the subsequent indication in the same order that "the amended complaint filed October 5, 2006, is the operative pleading in this case" is obviously a drafting error, which the Court hereby recognizes and corrects.  Because both of Plaintiff's proposed amended complaints have been stricken, the operative pleading in this case can only be the original complaint, (Docket No. 1).  The Court further notes, however, that even if one of Plaintiff's proposed amended complaints actually were the current "operative pleading," this case would still have to be dismissed, because the reasons for dismissal, (discussed hereafter), would be fully applicable to any amended pleading that Plaintiff might have properly filed in this case.

condition[,] subjecting plaintiff to further immonant [sic] dangers of serious physical injurys [sic]."  (Complaint, Attachment, p. 2.)

Finally, Plaintiff is attempting to sue Defendant Sherman Maddox, a "discipline supervisor" at MCF-RC.  Maddox allegedly imposed disciplinary sanctions on Plaintiff and his attackers following the assault incident.  Plaintiff claims that he was "subjected to reverse discrimination" and "retaliation" by Maddox, because Plaintiff was "sentenced" to the prison segregation unit for only "slightly less time" than his attackers.  (Id., pp. 1-2.)

Plaintiff's complaint indicates that he is seeking "an immediate injunction in form of transfer to MCF Oak Park Heights or MCF Lino Lakes for safety,"[3] as well as "monetary damages from each defendant in the sum of $75,000.00 for compensation, $10,000.00 punitive, and $5,000.00 nominal, plus all associated medical cost[s]."  (Id., p. 2.)

In Defendants' motion for summary judgment, they contend, (inter alia), that Plaintiff's claims for relief cannot be entertained, because he did not fully exhaust all of his available administrative remedies, as required by 42 U.S.C. § 1997e(a).  The Court agrees.

## III.  STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate if the materials submitted in support of the motion "show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The standards for considering a Motion for Summary Judgment have their foundation in the provisions of Rule 56 of the Federal Rules of Civil

---

[3] Plaintiff's claims for injunctive relief have been rendered moot by his release from prison.  See Hickman v. Missouri, 144 F.3d 1141, 1142 (8th Cir. 1998) (section1983 claims for injunctive relief based on prison conditions are rendered moot by inmate-plaintiff's release from prison).

Procedure, as interpreted in a trilogy of cases decided by the Supreme Court in 1986.  In one of those cases, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the Supreme Court described the importance of the summary judgment procedure:

> "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis."

On a Motion for Summary Judgment, the moving party has the initial burden of establishing the "material facts" and demonstrating that there is not a "genuine" dispute as to whether those material facts are true.  Fed. R. Civ. P. 56(c).  To defeat the motion, the opposing party must then establish that there is a "genuine" issue as to material facts.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e).  If a motion for summary judgment is properly supported by affidavits or other evidence, the nonmoving party must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial.  Id. at 587; Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc., 824 F.2d 582, 585 (8th Cir. 1987), cert. denied, 484 U.S. 1010 (1988).  Although the evidence is examined in the light most favorable to the non-moving party, the non-moving party may not rely on conclusory allegations or denials. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Lambert v. City of Dumas, 187 F.3d 931, 934-35 (8th Cir. 1999).

The moving party is entitled to summary judgment when the non-movant fails to establish the existence of an essential element of a claim on which that party has the burden of proof at trial. Celotex Corp., 477 U.S. at 322. No genuine issue of material fact exists absent such foundation because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587. The Court considers the motion for summary judgment based upon the material presented in connection with the motion. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. The Court's inquiry should be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The Court is mindful that pro se pleadings should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); White v. Bond, 720 F.2d 1002, 1003 (8th Cir. 1983). Therefore, pro se pleadings are held to less stringent standards when challenged by motions to dismiss or for summary judgment. Haines, 404 U.S. at 520; Horsey v. Asher, 741 F.2d 209, 211 n.3 (8th Cir. 1984). Nonetheless, a pro se plaintiff's claim cannot survive a motion for summary judgment unless, in some form, he can fairly be said to have set forth specific facts demonstrating that there is a genuine issue for trial. Miller v. Solem, 728 F.2d

6

1020, 1023, (8th Cir.), <u>cert</u>. <u>denied</u>, 469 U.S. 841 (1984); <u>Quam v. Minnehaha County Jail</u>,

821 F.2d 522 (8th Cir. 1987).

## IV.  DISCUSSION

    A.  <u>The Exhaustion Of Administrative Remedies Requirement</u>

    42 U.S.C. § 1997e(a) provides that –

> "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

    Congress enacted this statute as part of the Prison Litigation Reform Act of 1995, ("PLRA"), which was intended to "reduce the quantity and improve the quality of prisoner suits." <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002).  The PLRA initiated "a variety of reforms designed to filter out the bad claims and facilitate consideration of the good."  <u>Jones v. Bock</u>, 127 S.Ct. 910, 914 (2007).  One of those reforms is the exhaustion of administrative remedies requirement prescribed by § 1997e(a).

    Our Court of Appeals has identified at least four valuable objectives that are promoted by an exhaustion of administrative remedies requirement.  First, exhaustion of administrative remedies helps to ensure a more complete development of the factual record before a claim is brought into court.  Second, it gives the court the benefit of whatever special knowledge and experience the administrative agency might have to offer.  Third, it acknowledges the autonomy and authority of administrative agencies.  Finally, to the extent that claims can be resolved at the administrative level, an exhaustion requirement promotes judicial economy.  <u>Mason v. Ciccone</u>, 531 F.2d 867, 870 (8th Cir. 1976).

As the Court of Appeals explained in <u>Johnson v. Jones</u>, 340 F.3d 624 (8th Cir. 2003), by enacting § 1997e(a) –

> "Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.  In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation.  In other instances, the internal review might filter out some frivolous claims.  And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy."

<u>Id</u>. at 626-27, citing <u>Porter</u>, 534 U.S. at 524-25.  <u>See</u> <u>also</u> <u>Woodford v. Ngo</u>, 126 S.Ct. 2378, 2385, 2387-88 (2006) (discussing the purposes and benefits of the § 1997e(a) exhaustion of administrative remedies requirement).

In <u>Booth v. Churner</u>, 532 U.S. 731 (2001), the United States Supreme Court held that a prisoner must exhaust all of his administrative remedies before filing suit in federal court, even if the specific relief that he is seeking is not directly available by means of the administrative remedy process.  According to <u>Booth</u>, "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."  <u>Id</u>. at 741, n. 6.  In other words, even if a prisoner is seeking only money damages, and such relief cannot be awarded under the applicable administrative remedies, the prisoner still must fully prosecute his claims through all available administrative channels before he can bring them into federal court.

The Supreme Court also stated in <u>Booth</u> that "[t]he 'available remed[y]' must be 'exhausted' <u>before</u> a complaint under § 1983 may be entertained."  <u>Id</u>. at 738 (alterations in the original; emphasis added).  This ruling has caused the Eighth Circuit Court of Appeals to conclude that a prisoner civil rights action must be summarily dismissed, if the

prisoner-plaintiff did not fully exhaust all available administrative remedies <u>before the action</u> <u>was commenced</u>.  <u>Johnson</u>, 340 F.3d at 627.  Even if the prisoner satisfies the exhaustion requirement while his lawsuit is still pending, the court still must dismiss any claims that were not fully exhausted as of the date when the lawsuit was filed.  <u>Id</u>. at 627-28.  The Court of Appeals explained this rule in terms that are directly applicable here:

> "<u>[I]n considering motions to dismiss for failure to exhaust under section</u> <u>1997e(a), the district court must look to the time of filing, not the time the</u> <u>district court is rendering its decision, to determine if exhaustion has</u> <u>occurred.  If exhaustion was not completed at the time of filing, dismissal is</u> <u>mandatory.</u>"

<u>Id</u>. at 627 (emphasis added).  This entire passage has been highlighted, because it shows so clearly why this action <u>must be</u> dismissed.

B.  <u>Plaintiff's Administrative Remedies</u>

The Minnesota DOC has adopted a formal "Grievance Procedure," which prescribes a set of administrative remedies that are available to Minnesota state prison inmates.  A copy of the Grievance Procedure is attached to the Affidavit of Kim Ebeling, [Docket No. 78], as "Exhibit 1."[4]  The purpose of the Grievance Procedure is simple and broad – "To provide a process for conflict resolution for offenders."  (<u>Id</u>., p. 1.)

---

[4]  The edition of the Grievance Procedure submitted with Kim Ebeling's Affidavit indicates that it was issued on May 2, 2006, and became effective on June 6, 2006, which was after Plaintiff filed this action.  However, this document also specifically indicates that the Grievance Procedure is subject to annual review, and that the edition submitted here is simply the annual "supersession" of the previous year's edition.  The record shows that the Grievance Procedure was in effect before June 6, 2006, because Plaintiff availed himself of it as early as February 2006.  (<u>See</u> "Discussion" at p. 11, <u>infra</u>.)  The Court further notes that a previous case decided in this District indicates that the DOC Grievance Procedure has been in effect since at least 2004.  <u>See</u> <u>Mullins v. Salazar</u>, Civil No. 04-5050 (PAM/FLN) (D.Minn. 2006), 2006 WL 2685097 at *5.

The DOC Grievance Procedure prescribes a three-step process. Inmates must first seek to resolve their grievances informally, by sending a "kite," (i.e., a short written note), to a pertinent prison staff member. If the kite does not resolve the grievance to the inmate's satisfaction, then the inmate must prepare and submit a formal "Offender Grievance form." The formal grievance is investigated by a "facility grievance coordinator," who submits the results of his or her investigation to the prison warden (or designee). The warden (or designee) then rules on the grievance, and gives notice of that ruling to the inmate.

If the inmate is dissatisfied with the decision of the warden (or designee), he can appeal that decision, by submitting a formal Grievance Appeal form to the DOC's "central office grievance appeal coordinator." That person will "[d]etermine the appropriate method of investigating the grievance and submit the investigation results with recommendation to the appropriate assistant or deputy commissioner." The assistant or deputy commissioner then makes a final decision on the grievance.

Under certain circumstances involving threats to the physical safety of an inmate grievant, an inmate can proceed directly to the final step of the administrative process, and submit his grievance directly to the central office grievance coordinator. However, the Grievance Procedure is always completed when – and only when – there has been a final decision from the assistant or deputy commissioner. Thus, the administrative remedies provided by the DOC are fully exhausted, for purposes of § 1997e(a), only when an inmate completes all of the prescribed steps of the DOC Grievance Procedure, and receives a final decision from the assistant or deputy commissioner.

In this case, Plaintiff filed six formal grievances after he was assaulted on November 11, 2005.  (Ebeling Aff., p. 1, ¶ 3.)  Copies of the six resulting grievance reports are attached to the Affidavit of Kim Ebeling, as Exhibit 2.  Those reports show that Plaintiff filed grievances on February 7, 2006, (Grievance # 2672), March 6, 2006, (Grievance # 2723), May 1, 2006, (Grievance # 2816), May 22, 2006, (Grievance # 2842), September 19, 2006, (Grievance # 3059), and November 1, 2006, (Grievance # 3071).

Plaintiff's current lawsuit was filed on January 31, 2006, which was before he even filed, (let alone completed), even the earliest of his six grievances under the DOC Grievance Procedure.  It is therefore readily apparent that Plaintiff had not fully exhausted his administrative remedies for any of his current claims for relief when he commenced the present action.

Plaintiff contends that it is unreasonable to expect an inmate to exhaust his administrative remedies if he is "already in the hospital broke... or dead."  (Plaintiff's Declaration in Opposition to Defendants['] Motion for Judgment, [Docket No. 89], p. 10, ¶ 9.)  Although Plaintiff makes this argument in the abstract, he presumably means that he could not exhaust his administrative remedies, because of the injuries he sustained as a result of the assault committed against him.  This argument must be rejected, because Plaintiff has not shown that he was, in fact, physically or mentally incapable of pursuing his available administrative remedies before filing suit.  Moreover, Plaintiff did file a grievance claim as early as February 2006.  He has made no effort to explain why he did not exhaust his administrative remedies for that claim, as well as the rest of his claims, before starting his present lawsuit.

11

The Court also notes that Plaintiff has submitted a copy of a document entitled "Notice of Intention to File Claim (42 USC 1983)," (Docket No. 90), which he apparently prepared in early December 2005 – i.e., just a few weeks after he was injured, and well before he filed his current lawsuit.  That document clearly belies Plaintiff's suggestion that he was physically or mentally incapable of pursuing his claims through the DOC's Grievance Procedure.

Plaintiff further contends that he actually did exhaust his administrative remedies, by sending the aforementioned "Notice of Intention to File Claim (42 USC 1983)" to the Minnesota Attorney General.  (See Plaintiff's Declaration in Opposition to Defendants['] Motion for Judgment," p. 9, ¶ 9.)  This argument must also be rejected.  The DOC's Grievance Procedure sets out a specific set of steps that must be followed by an inmate who is attempting to exhaust his administrative remedies.  Sending a "Notice of Intention to File Claim" to the Attorney General is not part of prescribed procedure.  Therefore, the notice cited by Plaintiff clearly did not satisfy the exhaustion of administrative remedies requirement.[5]

Based on the present record, the Court finds that, as of the date when this action was commenced, Plaintiff had not fully exhausted his available administrative remedies, under the Minnesota DOC Grievance Procedure, for any of the claims presented in this action.  Plaintiff therefore failed to comply with the exhaustion of administrative remedies requirement prescribed by § 1997e(a).

---

[5]  Furthermore, Plaintiff filed his current lawsuit before he received a final response to the "notice" that he sent to the Attorney General.  Therefore, even if that notice were considered to be an administrative remedy, the PLRA exhaustion requirement still would not be satisfied here, because Plaintiff did not exhaust that "remedy" before he sued.

## V. CONCLUSION

The Supreme Court has just recently reiterated that "[t]here is no question that exhaustion [of administrative remedies] is mandatory under the PLRA and that unexhausted claims cannot be brought in court." <u>Jones</u>, 127 S.Ct. at 918-19. <u>See also</u> <u>Woodford</u>, 126 S.Ct. at 2382 ("[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"). The concomitant rule prescribed by the Court of Appeals in <u>Johnson</u> is equally clear: If a prisoner does not exhaust his administrative remedies <u>before</u> <u>filing a complaint in federal court</u>, "dismissal is mandatory." 340 F.3d at 627. Even if a prisoner subsequently satisfies the exhaustion requirement while his action is still pending, the case still must be dismissed. <u>Id</u>.

Here, the record shows that Plaintiff did not even initiate the DOC administrative remedy process, for any claim, before he commenced this action. Therefore, this action must be dismissed in its entirety. <u>See</u> <u>Marlin v. Marquez</u>, 218 Fed.Appx. 545 (8th Cir. 2007) (unpublished opinion) (dismissal of prisoner's civil rights claims was "mandatory," because he failed to complete all of the necessary steps of the administrative remedy process before filing his complaint); <u>see also</u> <u>Mullins v. Salazar</u>, Civil No. 04-5050 (PAM/FLN), (D.Minn. 2006), 2006 WL 2685097 at *5 (Minnesota state prisoner's claims dismissed, because he did not completely exhaust the administrative remedies provided by the DOC Grievance Procedure).[6]

---

[6] In light of <u>Johnson</u>'s explicit instruction that district courts are to "look to the time of filing" of the complaint "to determine if exhaustion has occurred," it is neither necessary nor appropriate to consider whether Plaintiff may have exhausted his administrative remedies as to any of his current claims for relief at some time after he filed this action. It is worth noting, however, that Defendants contend most of the formal grievances filed by Plaintiff either (a) do not pertain to the claims presented here, or (b) were not <u>fully</u>

When a case is dismissed pursuant to § 1997e(a), because of the plaintiff's failure to exhaust his administrative remedies, it must be dismissed without prejudice. See Harris v. Kemna, 155 Fed.Appx. 941 (8th Cir. 2005) (unpublished opinion); Nash v. Lappin, 172 Fed.Appx. 702, 703 (8th Cir. 2006) (unpublished opinion).  Therefore, the Court will recommend that Defendants' motion for summary judgment be granted, and that this action be dismissed without prejudice.[7]

---

exhausted, because they were never presented on appeal to the DOC's central office. Because Plaintiff is no longer in prison, it may well be too late for him to exhaust his previously unexhausted claims.  If that is so, then those claims apparently are not just "unexhausted," but rather, they are, in effect, "procedurally defaulted," which means that Plaintiff is barred from ever bringing those claims into federal court. See Woodford, 126 S.Ct. at 2386-87.

[7] Plaintiff should find little solace in the Court's recommendation that this action be dismissed without prejudice.  Because Defendants' failure-to-exhaust argument is found to be dispositive, their other arguments for dismissal have not been adjudicated here. However, based on the current record, it appears unlikely that Plaintiff could ever succeed on any of the claims he is attempting to advance here.  The assault committed against Plaintiff, and his resulting injuries, are certainly regrettable.  However, based on the evidence of record, it does not appear that the assault and resulting injuries were caused or exacerbated by any misconduct by Defendants, which violated the Eighth Amendment's prohibition against "cruel or unusual punishment."  Plaintiff obviously believes that Defendants are hiding some critical evidence, which would show that they deliberately coordinated the assault against him, and then maliciously disciplined him and deprived him of medical care for his injuries. But Plaintiff has offered no good and specific reason to believe that any such evidence actually exists.  Furthermore, while the Court has not determined whether Plaintiff has, as of now, fully exhausted his administrative remedies for any of his current claims, it appears from the present record that he probably has not done so.  For this additional reason, any future litigation would appear to be problematic. (See n. 6, supra.)

Plaintiff can, of course, proceed from here as he sees fit.  However, given the fact that he is out of prison, he should now have greater access to legal assistance, and it might behoove him to have his case reviewed by an attorney, and secure legal representation, before undertaking any further legal action.

## VI.  RECOMMENDATION

Based upon the above, and upon all of the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion for summary judgment, (Docket No. 70), be granted; and

2.  This action be dismissed without prejudice.

Dated: July 18, 2007

 s/ Arthur J. Boylan
ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before August 1, 2007.